UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RANDY A. MUDGE,

                Plaintiff,

   -v-                                                   1:13-CV-891

ANNE M. ZUGALLA; THE NEW YORK
STATE DEPARTMENT OF EDUCATION;
RANDALL SQUIER; THE COXSACKIE–
ATHENS CENTRAL SCHOOL DISTRICT;
MICHELE WEAVER; and THE
MIDDLEBURGH CENTRAL SCHOOL
DISTRICT,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| COOPER ERVING & SAVAGE LLP<br>Attorneys for Plaintiff<br>39 North Pearl Street<br>4th Floor<br>Albany, NY  12207 | PHILLIP G. STECK, ESQ.<br>CARLO ALEXANDRE C. DE<br>   OLIVEIRA, ESQ. |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General for the State of New York<br>Attorneys for Defendants Zugalla and the<br>   New York State Department of Education<br>The Capitol<br>Albany, NY  12224 | BRUCE J. BOIVIN, ESQ.<br>Ass't Attorney General |
| HOGAN, SARZYNSKI, LYNCH, DEWIND &<br>   GREGORY, LLP<br>Attorneys for Defendants Squier and the<br>   Coxsackie–Athens Central School District<br>520 Columbia Drive<br>Suite 204<br>Johnson City, NY  13790 | JAMES A. GREGORY, ESQ. |

GIRVIN & FERLAZZO. P.C.                                PATRICK J. FITZGERALD, III, ESQ.
Attorneys for Defendants Weaver and the
   Middleburgh Central School District
20 Corporate Woods Boulevard
Albany, NY 12211

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## **I. INTRODUCTION**

Plaintiff Randy Mudge ("plaintiff" or "Mudge") filed this civil rights action on July 30, 2013, against the following defendants: The New York State Department of Education ("NYDOE") and Anne M. Zugalla, a Senior Professional Conduct Investigator with the NYDOE ("Investigator Zugalla") (collectively "the State defendants")[1]; the Coxsackie–Athens Central School District ("Coxsackie District") and Randall Squier, Superintendent of the Coxsackie District ("Superintendent Squier") (collectively "the Coxsackie defendants"); and the Middleburgh Central School District ("Middleburgh District") and Michele Weaver, Superintendent of the Middleburgh District ("Superintendent Weaver") (collectively "the Middleburgh defendants"). All individual defendants are sued in their individual capacities only.

Mudge asserts the following three causes of action, all brought pursuant to 42 U.S.C. § 1983: (1) violation of his right to procedural due process; (2) violation of his substantive due process rights; and (3) a stigma-plus claim. He also delineates a fourth cause of action,

---

[1] Plaintiff also named John Doe and Jane Roe—unknown employees of the NYDOE whose identities he asserts will be revealed during discovery.

in which he seeks injunctive relief against the State defendants only.²

All three groups of defendants have moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions have been fully briefed. Oral argument was heard on December 13, 2013, in Utica, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

The following factual allegations have been taken from the complaint and are assumed true for purposes of the motions to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Mudge, a resident of Greene County, New York, worked in the athletic department in the Hunter–Tannersville Central School District for over twenty years. In 2008–2009, the NYDOE initiated an investigation into allegations that he had engaged in sexual intercourse with two former students approximately twenty years ago.³ Following an administrative hearing, a three-person panel voted to suspend his teaching and administrative licenses for one year. As a result of this investigation and suspension, plaintiff resigned from the Hunter–Tannersville Central School District in June 2009.

After his license was reinstated, Mudge applied for administrative and teaching positions in various school districts. He fully disclosed his suspension and the reasons

---

² In his response to the motions to dismiss, Mudge argues that the complaint adequately states a § 1983 conspiracy claim. This is the first mention of a conspiracy claim, which he has not pleaded in the complaint. It is well-established that a party may not use his opposition to a dispositive motion as a vehicle to amend the complaint. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998); Salmon v. Blesser, No. 1:13-CV-1037, 2014 WL 1883552, at *8 (N.D.N.Y. May 12, 2014) (D'Agostino, J.). Therefore, any alleged § 1983 claim will not be addressed.

³ The sexual contact occurred shortly after the students graduated from high school.

- 3 -

therefor on all applications. At about this time, the State defendants allegedly began interfering with his attempts to secure new employment in the field of education in New York. In 2010 someone from the NYDOE instructed the Delaware–Chenango–Madison–Otsego BOCES not to allow him to serve as a sports officiant. Plaintiff was eventually permitted to officiate basketball games, but only after he sought assistance from legal counsel.

During this same time period, Mudge applied for permanent full-time positions in the Coxsackie and Middleburgh Districts. Although he was not offered full-time employment, he began working as a per diem substitute teacher in both districts. He worked in the Coxsackie District from March 2011 until February 1, 2012, when Superintendent Squier removed him from the substitution list without explanation. There had been no complaints regarding his conduct or job performance. On September 27, 2012, Superintendent Squier advised plaintiff that he had been removed due to information provided by NYDOE employees, specifically Investigator Zugalla, John Doe, and/or Jane Roe.

Mudge's position as a substitute teacher in the Middleburgh District also ended abruptly. On February 15, 2012, Superintendent Weaver told him that she had received a letter from Investigator Zugalla indicating he was the subject of an ongoing NYDOE investigation. Superintendent Weaver subsequently had a phone conversation with Investigator Zugalla, who complained about the Middleburgh District's decision to employ plaintiff. On August 29, 2012, the Middleburgh School Board voted 5–0 to reappoint plaintiff for another year as a substitute teacher. Nonetheless, he was terminated on September 12, 2012. Plaintiff's request to meet with the Middleburgh School Board was granted, and he was advised that his termination stemmed from complaints regarding his previous license suspension and was unrelated to his recent work as a substitute teacher. The Board was

also aware of the conversations between Superintendent Weaver and Investigator Zugalla.

After plaintiff's termination from the Middleburgh District, an article appeared in the Schoharie Times Journal under the headline: "MCS removes ex-teacher from substitute list. Former Hunter teacher allegedly had sex with two teenagers." Compl., ECF No. 1, ¶ 30.

## III. DISCUSSION

The three groups of defendants put forth substantially the same arguments in support of their motions to dismiss. Specifically, they maintain the complaint must be dismissed in its entirety because: (1) Mudge does not have a protected property interest in his employment as a per diem substitute teacher; (2) such employment is not the type of fundamental right contemplated by substantive due process case law; (3) any statements made during the course of his termination were neither public nor false to support a stigma-plus claim; and (4) adequate post-deprivation due process was available to plaintiff in the form of an Article 78 proceeding. In addition, the State defendants argue that all claims against the NYDOE must be dismissed as this state agency is entitled to Eleventh Amendment immunity.[4]

### A. Rule 12(b)(6) Motion to Dismiss—Legal Standard

Defendants seek dismissal of the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

---

[4] The State defendants also correctly assert that any Fifth Amendment claim must be dismissed as the Fifth Amendment applies only to federal officials. Snow v. Vill. of Chatham, 84 F. Supp. 2d 322, 326–27 (N.D.N.Y. 2000) (Kahn, J.). Plaintiff's due process claims are instead asserted under the Fourteenth Amendment. See Hickey v. City of New York, No. 01 Civ. 6506, 2004 WL 2724079, at *15 (S.D.N.Y. Nov. 29, 2004) ("'Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against State action in identical words by the Fourteenth.'" (quoting Betts v. Brady, 316 U.S. 455, 462 (1942)), aff'd, 173 F. App'x 893 (2d Cir. 2006) (summary order). Indeed, plaintiff's complaint invokes both the Fifth and the Fourteenth Amendments. Compl. ¶ 1.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers, 282 F.3d at 152.

### B. Eleventh Amendment Immunity

The State defendants seek dismissal of all claims against the NYDOE pursuant to the immunity granted by the Eleventh Amendment. In the complaint, Mudge specifically seeks "[i]njunctive relief, not damages," from the NYDOE. Compl. ¶ 11. In his opposition papers, he maintains that the Eleventh Amendment "does not prohibit the issuance of an injunction against the State for unconstitutional conduct." Pl.'s Mem. Opp'n Dismiss, ECF No. 19, 2. Plaintiff mischaracterizes the immunity granted by the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. CONST. amend XI. "The Eleventh Amendment has been interpreted as also barring suits in federal court against a state brought by that state's own citizens." Mary Jo C.

v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 151 (2d Cir.), cert. dismissed, 133 S. Ct. 2823 (2013).  In short, this immunity bars actions against states and state agencies.  Gollomp v. Spitzer, 568 F.3d 355, 365–66 (2d Cir. 2009).

Eleventh Amendment immunity precludes a plaintiff from seeking any relief against states and state agencies—including monetary and injunctive relief.  Cory v. White, 457 U.S. 85, 90–91 (1982).  This immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  Gollomp, 568 F.3d at 366 (internal quotation marks omitted).  The NYDOE is an arm of New York.  See United States v. City of Yonkers, 96 F.3d 600, 619 (2d Cir. 1996); Dube v. State Univ. of New York, 900 F.2d 587, 594–95 (2d Cir. 1990).

The Eleventh Amendment also bars claims for money damages against state officials acting in their official capacities.  Kentucky v. Graham, 473 U.S. 159, 167–68 (1985); contra Dube, 900 F.2d at 595 ("The Eleventh Amendment, however, provides no immunity for state officials sued in their personal capacities.").  One important exception to the Eleventh Amendment's immunity allows for suits against state officials in their official capacities for prospective injunctive relief to stop ongoing violations of federal law.  Ex parte Young, 209 U.S. 123, 159–60 (1908); Mary Jo C., 707 F.3d at 166.

Finally, Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  Gollomp, 568 F.3d at 365–66.  It is well-settled that Congress did not abrogate states' immunity through § 1983.  Quern v. Jordan, 440 U.S. 332, 343–45 (1979); Dube, 900 F.2d at 594.  Nor is there any indication that the NYDOE has consented to suit in this matter.

Therefore, all claims asserted against the NYDOE must be dismissed.  Simply put,

Mudge seeks injunctive relief from the wrong entity. As explained above, the Eleventh Amendment prohibits suits against state agencies regardless of the relief sought. Prospective injunctive relief is only available against state officials in their official capacities. However, plaintiff has specifically sued the individual State defendants in their individual capacities only. See Compl. ¶¶ 9–10. Thus, the only viable claims against the State defendants, as alleged in the complaint, are for monetary damages against Investigator Zugalla, John Doe, and Jane Roe in their individual capacities.

At oral argument, however, plaintiff's counsel made clear that the primary relief plaintiff seeks is an injunction barring the State defendants from unconstitutionally interfering with his future job applications. Counsel also suggested, without citation to any supporting case law, that naming the NYDOE as a defendant in this matter is the functional equivalent to naming the Chancellor of the NYDOE in her official capacity. In the interest of judicial economy, the Chancellor of the NYDOE, Carmen Farina, in her official capacity only, will be added as a defendant *sua sponte* for purposes of plaintiff's request for prospective injunctive relief. See FED. R. CIV. P. 21 ("On a motion or on its own, the court may at any time, on just terms, add or drop a party."); Zuk v. Gonzalez, No. 5:07-CV-732, 2007 WL 2163186, at *2 (N.D.N.Y. July 26, 2007) (Scullin, S.J.).

Accordingly, all claims against the NYDOE will be dismissed. Further, the Chancellor of the NYDOE will be added as a defendant, in her official capacity only and only for purposes of plaintiff's requested prospective injunctive relief.

### C. Procedural Due Process

Defendants maintain Mudge's employment as a per diem substitute teacher is not a property interest entitled to due process protection. In response, plaintiff clarifies that he

does not allege a property interest in his employment as a substitute teacher. He instead argues that his property interest lies in his state-issued teaching license, which he claims defendants have effectively prevented him from using without adequate due process.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, § 1. "To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, we must first identify the property interest involved. Next, we must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005).

Accepting the factual allegations in the complaint, Mudge has adequately stated a procedural due process claim against the State defendants. Although plaintiff does not enjoy a protected property interest in any particular untenured, per diem substitute teacher position, he does have a protected interest in the meaningful opportunity to seek employment pursuant to his state-issued teaching license. See Lombard v. Bd. of Educ., 645 F. Supp. 1574, 1579 (E.D.N.Y. 1986) ("[B]ecause New York recognizes a teaching license as conferring a 'valuable property right' to seek employment which may not be withdrawn without due process, plaintiff states a cause of action for deprivation of property within the meaning of the Fourteenth Amendment." (citations omitted)).

Moreover, upon reinstatement of his teaching license, Mudge fully disclosed his disciplinary history on job applications, the Coxsackie and Middleburgh Districts hired him as a substitute teacher, and there had been no new complaints lodged against him. Nonetheless, NYDOE employees—Investigator Zugalla, John Doe, and/or Jane Roe—

repeatedly interfered with his ability to utilize his teaching license and work in these public school systems.[5]

While the State defendants have not actually revoked or suspended his teaching license, their actions have resulted in the functional equivalent of a revocation. Indeed, the NYDOE has a virtual monopoly on state-issued teaching licenses, and actions by its employees to prevent an individual from working in its schools are tantamount to denying him the benefit of that license without any procedural due process. See Alvarez v. Hayward, No. 1:06-CV-745, 2006 WL 2023002, at *2 (N.D.N.Y. 2006) (Scullin, S.J.) (by barring plaintiff from his place of employment at the Saratoga Race Course, the New York Racing Association effectively denied him the benefit of his Racing and Wagering Board license); Lombard, 645 F. Supp at 1579 (plaintiff stated plausible due process claim against defendant Board, which exercised "a *de facto* power" over city school districts and allegedly instructed administrators in those districts not to hire plaintiff, thereby constituting "a constructive cancellation of plaintiff's teaching license").

Following the same legal reasoning, this claim may only be asserted against the State defendants. The school districts neither issued Mudge's teaching license nor have the ability to constructively revoke it. Indeed, the alleged conduct of the individual school districts and superintendents impacts only plaintiff's per diem substitute teacher positions in those respective districts, it does not effectively deny him the opportunity to use his teaching license elsewhere in the state. Again, plaintiff's protected property interest lies in his

---

[5] The State defendants prematurely assert that these employees did nothing more than notify the school districts of Mudge's disciplinary history. While discovery may prove this assertion true, plaintiff has alleged that NYDOE employees repeatedly contacted the school administrators, implied that plaintiff was the subject of an ongoing investigation, and persuaded them to terminate his employment, effectively preventing him from utilizing his state-issued teaching license.

opportunity to seek employment pursuant to his state-issued teaching license, not in any particular substitute teaching position. Therefore, his procedural due process claim will be dismissed to the extent it is asserted against the Coxsackie and Middleburgh defendants. See Lombard, 645 F. Supp. at 1577 ("[P]laintiff has no constitutionally protected property interest in employment as a teacher, and his allegations concerning the Board's refusal, either directly or indirectly, to afford him employment fall far short of stating a cause of action for deprivation of property without due process of law.").

Accordingly, the Coxsackie and Middleburgh defendants' motions to dismiss the procedural due process claim will be granted, but the State defendants' motion to dismiss this claim will be denied.

### D. Substantive Due Process

Mudge claims the defendants deprived him of the benefit of his teaching license in an arbitrary and egregious manner. Such is an invocation of the Fourteenth Amendment's protections of the "substantive aspects of life, liberty, and property." Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198 (1979) (per curiam).

However, defendants correctly point out that rights related to employment are not fundamental constitutional rights protected by substantive due process. See id. (comparing employment interests to those "resembling the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life" (internal quotation marks omitted)); Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) (routine state-law contractual rights are not worthy of substantive due process protection); Cohane v. Nat'l Collegiate Athletic Ass'n, Nos. 04-CV-0181S, 04-CV-0943S, 2013 WL 8171044, at *55–56 (W.D.N.Y. Aug. 8, 2013) (collecting cases holding that

rights created by state law—such as tort and public employment—are not subject to substantive due process protection).

Accordingly, defendants' motions to dismiss the substantive due process claim will be granted.

**E. Stigma-Plus**

Finally, Mudge alleges that the defendants deprived him of his good reputation while unconstitutionally hindering his search for employment. Defendants maintain that any stigmatizing statements were neither false nor made public. They further claim a post-deprivation Article 78 proceeding was available and provided Mudge with adequate due process through which to clear his name.

A person's interest in his good reputation, standing alone, is insufficient to invoke procedural due process protections. Patterson v. City of Utica, 370 F.3d 322, 329–30 (2d Cir. 2004). However, a "stigma-plus" cause of action exists where a stigmatizing statement is uttered (stigma) during the course of a deprivation of a tangible liberty or property interest (plus), without affording adequate due process. Id. at 330. Therefore, to state a plausible stigma-plus claim, Mudge must allege: "(1) the utterance of a statement sufficiently derogatory to injure his . . . reputation, that is capable of being proved false, and that he . . . claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted).

The first element is satisfied if the statement(s) "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or

- 12 -

her profession." Patterson, 370 F.3d at 330.  The statement(s) must have been made public, such as where stigmatizing charges are placed in the employee's personnel file and are likely to be disclosed to potential employers.  Id.; Donato v. Plainview–Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630–31 (2d Cir. 1996).  Additionally, the statement(s) must have been uttered "concurrently with, or in close temporal relationship to," plaintiff's dismissal from government employment or the deprivation of his protected interest.  Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006).

The appropriate remedy for a stigma-plus claim is "a post-deprivation opportunity to clear his name."  Patterson, 370 F.3d at 330.  Such a name-clearing hearing "gives the plaintiff an opportunity to hear and answer first-hand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation."  Id. at 335.  However, in the event that such a hearing would be futile due to the nature of the stigmatizing statements or time that has passed, nominal or compensatory damages may be awarded instead.  Id. at 337–38.

Mudge states a plausible stigma-plus claim against the State defendants.  He claims Investigator Zugalla, John Doe, and/or Jane Roe contacted Superintendents Squier and Weaver and made statements injurious to his reputation and that called into question his competency to work in their school districts.  The exact communication between the NYDOE employees and the district administrators is unknown.  It is premature to conclude, as a matter of law, that the statements related only to plaintiff's undisputed disciplinary history and were not false, as defendants assert.  Moreover, Investigator Zugalla reportedly informed Superintendent Weaver that Mudge was the subject of an ongoing investigation—an assertion plaintiff claims was false and can be proven false.

Next, these statements were uttered directly to current and potential employers. It is also reasonable to infer that such correspondence was placed in Mudge's personnel file and is likely to be disclosed to potential future employers. Lastly, the statements were made contemporaneously with the alleged deprivation of plaintiff's protected interest in the benefit of his teaching license. He therefore adequately alleges the elements of his stigma-plus claim. Moreover, Mudge was never afforded an opportunity to rebut those charges before the State defendants initiated the alleged campaign to prevent him from using his teaching license anywhere in New York.

However, as with the procedural due process claim, plaintiff's stigma-plus claim is only properly asserted against the State defendants. Plaintiff does not allege that either Superintendent or any school district employee uttered or publicized stigmatizing statements about him. While he cites a local newspaper headline, there is nothing in the complaint connecting the Middleburgh defendants to that article.

Finally, without discovery, it is unclear whether a prompt name-clearing hearing would have been futile at the time the State defendants uttered the allegedly stigmatizing statements, whether a future name-clearing hearing will similarly be futile, or what kind of damages, if any, plaintiff suffered. Therefore, it is premature to determine what type of relief may be appropriate if Mudge ultimately prevails on this claim. See id. at 338.

Accordingly, the Coxsackie and Middleburgh defendants' motions to dismiss the stigma-plus claim will be granted, but the State defendants' motion to dismiss this claim will be denied.

**F. Availability of an Article 78 Proceeding**

Finally, defendants maintain that the availability of a post-deprivation Article 78

- 14 -

proceeding was sufficient due process, thereby defeating Mudge's procedural and stigma-plus due process claims.

The availability of a prompt post-deprivation hearing, such as a state Article 78 proceeding, satisfies due process requirements in the context of "at-will" employment such as substitute teaching. Segal, 459 F.3d at 214–15.[6] However, where, as here, a protected property interest is implicated, a post-deprivation hearing only constitutes sufficient due process where the deprivation was unpredictable, pre-deprivation process was impossible, and the officials' conduct was truly "unauthorized." Zinermon v. Burch, 494 U.S. 113, 136–38 (1990); see also Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (a meaningful post-deprivation remedy satisfies due process where the deprivation was caused by random, unauthorized acts of state employees).

As explained above, Mudge alleges more than a mere termination of at-will employment. He instead alleges that the State defendants have uttered false and stigmatizing statements to his current and potential employers in a calculated effort to prevent him from utilizing his state-issued teaching license anywhere in New York. If true, such a deprivation is neither random nor unpredictable, and pre-deprivation process could have been afforded. Indeed, plaintiff's license was suspended in 2008–2009 only after an investigation was initiated, an administrative hearing was convened, and a three-judge panel rendered a formal decision. This type of due process—at least—is required before the State defendants may actually, or constructively, suspend or revoke his teaching license again.

Moreover, Investigator Zugalla's status and exact role in the NYDOE is currently

---

[6] Therefore, even if any of the due process claims were properly asserted against the school districts or superintendents, such would fail. As explained above, the alleged conduct of the school district employees impacted only plaintiff's per diem, at-will substitute teacher positions.

- 15 -

unclear. Similarly, discovery is required to identify John Doe and Jane Roe, NYDOE employees of unknown title and rank. Thus, at least at this early stage of the litigation, this is not a case of random and unauthorized conduct by a low-level government official, for which a prompt post-deprivation hearing would satisfy due process requirements. See DiBlasio v. Novello, 344 F.3d 292, 302–03 (2d Cir. 2003) (official had authority to summarily suspend plaintiff's medical license, and "any abuse of that authority that rose to the level of a due process violation cannot be considered 'random and unauthorized'").

Accordingly, the availability of a post-deprivation Article 78 proceeding does not necessitate dismissal of plaintiff's remaining due process claims.

## IV. **CONCLUSION**

As a state agency, the NYDOE is entitled to Eleventh Amendment immunity. In the interest of judicial efficiency, the Chancellor of the NYDOE will be added as a defendant, in her official capacity only, for purposes of plaintiff's request for prospective injunctive relief. Mudge has adequately pleaded his procedural due process and stigma-plus claims against the State defendants. However, any Fifth Amendment claim, the substantive due process claim, and all claims asserted against the Coxsackie and Middleburgh defendants will be dismissed.

Therefore, it is

ORDERED that

1. The Middleburgh Central School District and Michele Weaver's motion to dismiss (ECF No. 14) is GRANTED, and all claims asserted against them are DISMISSED;

2. The Coxsackie–Athens Central School District and Randall Squier's motion to

dismiss (ECF No. 15) is GRANTED, and all claims asserted against them are DISMISSED;

3. The New York State defendants' motion to dismiss (ECF No. 16) is GRANTED in part and DENIED in part;

4. All claims asserted against the New York State Department of Education are DISMISSED;

5. Any Fifth Amendment claim is DISMISSED;

6. The substantive due process claim is DISMISSED;

7. The Clerk of the Court is directed to add Carmen Farina, Chancellor of the New York State Department of Education, as a defendant, in her official capacity only;

8. The two remaining defendants include Anne M. Zugalla, in her individual capacity for monetary damages only, and Carmen Farina, in her official capacity for prospective injunctive relief only, and the Clerk of the Court is directed to amend the caption accordingly; and

9. The two remaining claims are the procedural due process and stigma-plus claims.

IT IS SO ORDERED.

The remaining defendants shall file an answer to the complaint on or before June 23, 2014.

_____
United States District Judge

Dated: June 2, 2014
      Utica, New York.