UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RANDY A. MUDGE,

                Plaintiff,

  -v-                                     1:13-CV-0891
                                          (DNH/DJS)
ANNE M. ZUGALLA, DANIEL HARDER, AND
BART ZABIN, and the COMMISSIONER OF
THE NEW YORK STATE DEPARTMENT OF
EDUCATION, in his or her official capacity,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

COOPER, ERVING LAW FIRM             PHILLIP G. STECK, ESQ.
Attorney for the Plaintiff
39 North Pearl Street
Albany, NY 12207

HON. ERIC T. SCHNEIDERMAN        BRUCE J. BOIVIN, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

**I.**    **INTRODUCTION**.

Plaintiff Randy Mudge ("Mudge") filed this civil rights action on July 20, 2013, alleging three causes of action, each brought pursuant to 42 U.S.C. § 1983: (1) violation of his procedural due process rights; (2) a stigma-plus claim; and (3) a request for injunctive relief.

After defendants moved for summary judgment, the motion was granted in part and denied in part on January 6, 2016.

Defendants have now moved for reconsideration alleging error in law and fact concerning the following: (1) the Court improperly relied on hearsay testimony in concluding there were genuine issues of material fact precluding the dismissal of Mudge's procedural due process claim, (2) the Court failed to properly address the publication element of a stigma plus claim, (3) defendants are entitled to qualified immunity with respect to plaintiff's remaining claims, and (4) the Court failed to properly address plaintiff's third cause of action for injunctive relief. Defendants contend that these issues were improperly considered in the Memorandum-Decision and Order. Plaintiff opposes the motion. The motion was fully briefed by the parties.

## II.     **FACTUAL BACKGROUND**.

For purposes of this motion for reconsideration the facts are as follows.

Mudge holds a permanent Physical Education certification and a School District Administrator certification. In 2008-2009, the New York State Education Department ("SED") suspended his teaching and administrative licenses for the period from May 18, 2009 to May 17, 2010 after it was revealed that he had engaged in sexual intercourse with two former students approximately twenty years ago. After his license was reinstated, on or about November 2, 2011, Mudge was appointed as a certified substitute teacher for physical education and school administration by the Middleburgh Central School District (the "Middleburgh District"). The parties agree that at some point in the fall of 2011, Michele Weaver, Superintendent of the Middleburgh District ("Weaver"), became aware of Mudge's past suspension, either as a result of a discussion with plaintiff or an independent google search by members of the Board of

Education. Sometime around January or February 2012, defendant Daniel Harder, who served as the Office of School Personnel Review and Accountability ("OSPRA") prosecutor for Mudge's prior suspension, received a phone call from a member of the public who asked whether he was aware that plaintiff was working as a teacher in the Middleburgh District. Harder spoke with one of the OSPRA investigators, defendant Senior Investigator Anne Zugalla, and asked if she could determine whether plaintiff was working in the Middleburgh District and to acquire a copy of his employment application. On February 2, 2012, Zugalla faxed a form letter to the Middleburgh District which stated that OSPRA had "commenced an investigation against Randy A. Mudge" and requested that the Middleburgh District provide OSPRA with a complete copy of the district's investigation of Mudge, including his application for employment and resume (the "February 2, 2012 Letter"). Defendants claim that neither Investigator Zugalla nor any employee of SED ever called Superintendent Weaver to complain about the school district's decision to hire plaintiff or attempted to influence her to have his employment terminated. However, plaintiff argues that both Superintendent Weaver and her assistant informed him that Investigator Zugalla had spoken to each of them and questioned why the Middleburgh District had hired plaintiff.

On or about February 10, 2012, Superintendent Weaver submitted a request to SED pursuant to the New York State Freedom of Information Law for copies of documents concerning plaintiff and responsive documents detailing plaintiff's prior suspension were provided to her on or about February 27, 2012.

On or about June 27, 2012, the Middleburgh District approved the appointment of Mudge to the position of long term substitute teacher for the period from January 10, 2012 through June 30, 2012, the end of the school year. During an August 29, 2012 school board meeting, the board decided to appoint another individual to the long term substitute teacher position and appointed plaintiff back to the substitute teacher list. The proffered reason for this action was to save the school district money by hiring a less experienced individual. On September 12, 2012, the Middleburgh District board rescinded the prior approval of plaintiff to the substitute teach list.

In a January 6, 2016 Memorandum, Decision and Order, defendant's motion for summary judgment was denied as to plaintiff's procedural due process and stigma plus claims concerning his dismissal from the Middleburgh District.

## III.   LEGAL STANDARD.

(a) *Reconsideration Standard*.

The party moving for reconsideration has a heavy burden. See Krug v. City of Troy, 2010 WL 5138376, at *2 (N.D.N.Y. Dec. 10, 2010) (S.J. McAvoy). In general, a motion for reconsideration may only be granted upon one of three grounds: "(1) an intervening change in law, (2) the availability of evidence not previously available, and (3) the need to correct a clear error of law or prevent manifest injustice." Shannon v. Verizon N.Y., Inc., 519 F. Supp. 2d 304, 307 (N.D.N.Y. 2007) (Kahn, D.J.); see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). The standard for reconsideration is strict, and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 256-57 (2d Cir. 1995).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Id.

## IV. DISCUSSION.

### (a) *Plaintiff's Procedural Due Process Claim.*

Defendants have requested reconsideration of the denial of their motion for summary judgment concerning Mudge's procedural due process claim.  Defendants contend that the only evidence relied on by the Court in support of plaintiff's due process claim were the affidavits of plaintiff and former school board member Robert Herodes, which defendants argue contain only inadmissable hearsay.

In his affidavit, Mudge asserts that Weaver called him in for a meeting and asked if there was any further investigation of him by the SED. See Affidavit of Randy Mudge, at ¶ 15. Plaintiff claims that Weaver stated that "Anne Zugalla called her and questioned why the District was hiring [plaintiff]" and that Weaver said "SED had issues with how [plaintiff] had behaved in the past." Id.  Further, plaintiff states that Weaver "told [plaintiff] that she had reported every conversation with SED to the Board [of Education]", that Weaver had "continued contact with SED" and "admitted informing the Board that State Ed was investigating [plaintiff]." Id. at ¶ 16.

In the affidavit of Robert Herodes, he alleges that "Weaver told me and the Board members in Executive Session that the State Education Department had contacted her and said that the District should not be employing him because of his suspension." See Affidavit of Robert

Herodes, at ¶ 8.

Superintendent Weaver submitted an affidavit stating that she did not have any conversations with defendants or other employees of SED during the relevant time and that they did not encourage her to terminate plaintiff's employment at the Middleburgh District.

First, contrary to defendants' position, the Mudge and Herodes affidavits were not the only evidence presented by Mudge to support his procedural due process claim. As noted in the Memorandum-Decision and Order, the February 2, 2012 letter sent by Zugalla to Weaver in and of itself was problematic as it stated that SED "has commenced an investigation against Randy A. Mudge" and did not indicate the nature of the investigation being performed by SED. See February 2, 2012 Letter, Declaration of Anne Zugalla, Ex. A. Further, the information being acted upon by SED did not in and of itself suggest that Mudge had engaged in wrong doing in his interactions with the Middleburgh District or any other school district. Additionally, neither defendant Zugalla nor Harder had conversations with anyone at the Middleburgh District concerning SED's "ongoing investigation", communicate the results of such investigation or clear plaintiff of any alleged misconduct they were investigating. These undisputed circumstances are sufficient for plaintiff to have defeated defendants' motion for summary judgment and permit plaintiff to present his procedural due process claim to a jury.

The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." FED. R. EVID. 801(c) (Advisory Committee's Note). Where statements are offered to show their effect

on a listener's state of mind, they are not hearsay.  See United States v. Dupree, 706 F.3d 131, 136 (2d Cir. 2013); Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 65 n. 2 (2d Cir.2003).

Weaver's testimony that she had no contact with Harder or any other employee of SED with regards to Mudge's employment at the Middleburgh District will certainly assist defendants' case if she is found credible by a trier of fact.  However, both Mudge and Herodes will be able to testify regarding the statements allegedly made by Weaver as they will not be offered "to prove the truth of the matter asserted", but will be offered as help assess Weaver's credibility as the statements allegedly made by Weaver are inconsistent with her testimony.  See FED. R. EVID. 801 (Advisory Committee's Note) ("Prior inconsistent statements traditionally have been admissible to impeach but not as substantive evidence.").

Further, the statements allegedly made by Weaver are admissible for the effect they had on the receiver, in this case, members of the Middleburgh District's Board of Education, and not for the truth of the matter asserted.  The statements allegedly made by Weaver to the Middleburgh District's Board of Education in Executive Session are relevant because such statements potentially effected the state of mind of board members, regardless of whether such statements were true or not.  Therefore, the alleged statements made by Weaver would not be hearsay and the jury would be given a limiting instruction that the statements were not to be taken for the truth of the assertions, but merely for the fact that they were made and may have had an effect on the listeners.

As defendants have not demonstrated a need to correct a clear error of law or prevent manifest injustice as to Mudge's first cause of action, their motion to reconsider will be denied with respects to the first cause of action.

(ii) *Plaintiff's Stigma Plus Claim*.

Defendants argue that Mudge failed to put forth evidence concerning defendant's publication of the stigmatizing statements and that the Court inadequately addressed the issue in its decision.

To bring a stigma plus claim, "a plaintiff [must] allege (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden ... in addition to the stigmatizing statement." Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation omitted). In order to assert a stigma plus cause of action, Mudge must demonstrate that the stigmatizing statement made by the government were "publicized" or placed in the public discourse. See Abramson v. Pataki, 278 F.3d 93, 101-02 (2d Cir. 2002). However, this does not mean that the government's stigmatizing statement made be published in a public newspaper or widely disseminated to the community at large, as defendants argue. Rather, to satisfy the public discourse requirement, plaintiff must demonstrate that the stigmatizing statement was disseminated in a way to reach current or future potential employers of plaintiff. The Second Circuit has found that the public discourse requirement is satisfied when the stigmatizing statement is solely placed in an employee's personnel file, where it is likely to be disclosed to future employers. See Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006) ("[P]lacement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim."); Brandt v. Board of Cooperative Educational Services, 820

- 8 -

F.2d 41, 45 (2d Cir. 1987) ("If [plaintiff] is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his future job opportunities.").

It is not in dispute that Zugalla communicated directly with a then current employer of Mudge via the February 2, 2012 letter, stating that a new investigation had been commenced. Such dissemination of information directly to plaintiff's employer satisfies the publication element of plaintiff's stigma plus claim.

Further, defendants argue that the Court erred on the law by considering the affidavits of Mudge and Herodes as they relate to plaintiff's stigma-plus claim. Defendants claim that the only admissible evidence concerning the reason for Mudge's termination from the Middleburgh District is that of Superintendent Weaver, who has stated Mudge's termination resulted solely from financial considerations.

For the reasons already discussed, the statements allegedly made by Weaver contained in the relevant portions of the affidavits of Mudge and Herodes are not hearsay as they are not being offered for the truth of the matter asserted and the jury will be instructed accordingly. A genuine issue of material fact exists as to whether Mudge's loss of job prospects resulted from the allegedly stigmatizing statements of defendants.

As defendants have not demonstrated a need to correct a clear error of law or prevent manifest injustice as to Mudge's second cause of action, their motion to reconsider will be denied with respects to the second cause of action.

### *(iii)* *Qualified Immunity.*

Defendants assert that the individual defendants are entitled to qualified immunity from the money damages Mudge seeks pursuant to the first and second causes of action. However, for the foregoing reasons, defendants failed to meet their burden on summary judgment and again for reconsideration.

"Qualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is not only a defense, it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

"Defendants are entitled to qualified immunity 'if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001)). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" Id. (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir.1998)). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch., 187 F.3d 272, 278 (2d Cir.1999).

Defendants contend that the law was not clearly established and that no reasonable State official in defendants' position could have known that their conduct was potentially violating of Mudge's constitutional rights.

At the time of Mudge's employment at the Middleburgh District, it was well established that a state actor could not interfere with an individual's teaching license. Therefore, defendants would have been aware that they were violating plaintiff's constitutional rights if they did interfere.

Defendants decided on their own volition and without any allegation of misconduct on the part of Mudge in interject themselves into his existing employment with the Middleburgh District. By sending the February 2, 2012 letter to his then current employer stating that SED had "commenced an investigation" against plaintiff, it cannot be said that such actions were objectively reasonable. Accordingly, defendants have not met their burden to prove that they are entitled to qualified immunity. Therefore, the defendants' motion to reconsider will be denied with respects to qualified immunity.

      (iv)    *Injunctive Relief.*

Defendants seek to dismiss Mudge's third cause of action for injunctive relief against the Commissioner of the New York State Department of Education. Defendants argue that the claim must fail because plaintiff cannot prove any ongoing constitutional violation.

The Eleventh Amendment bars suits in federal courts against states and state officials acting in their official capacities by their own citizens, citizens of another state, and foreign sovereigns. See City of Shelton v. Hughes, 578 Fed. Appx. 53, 54–55 (2d Cir. 2014). However,

the Ex parte Young doctrine ensures the protection of individuals' federal rights by allowing suits for prospective injunctive relief against state officials in their official capacity. See Ex Parte Young, 209 U.S. 123 (1908). It is beyond dispute that Ex parte Young actions may be maintained for violations of 42 U.S.C. § 1983. See Dube v. State Univ. of New York, 900 F.2d 587, 595 (2d Cir.1990) (permitting, under Ex parte Young, a § 1983 suit for prospective injunctive relief against state officers in their official capacities); McKeown v. N.Y. State Com'n on Judicial Conduct, 377 Fed. Appx. 121, 123 (2d Cir. 2010). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002); see also In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007). This exception is a limited one, utilized only "when there is a specific conflict between the federal mandate and the state plan or practice that a federal right is implicated," Doe v. Pfrommer, 148 F.3d 73, 80–81 (2d Cir. 1998), and is authorized to "vindicate the supremacy of [federal] law." Ward v. Thomas, 207 F.3d 114, 119 (2d Cir. 2000).

To successfully avoid the Eleventh Amendment bar, a plaintiff must prove that a defendant's violation of federal law is of an ongoing nature as opposed to a case in which federal law has been violated at one time or another over a period of time in the past. See Papasan v. Allain, 478 U.S. 265, 277–78 (1986). A violation is deemed ongoing when its detrimental impact continues into the present. See Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir.1985) (state employee's suit for reinstatement was not barred by the Eleventh Amendment even though the alleged violation—unlawful termination—took place in the past). The inquiry for determining whether an "ongoing violation" exists is, "does the enforcement of [the law] amount to a

continuous violation of plaintiffs' constitutional rights" or "a single act that continues to have negative consequences for plaintiffs." New Jersey Educ. Ass'n v. New Jersey, 2012 WL 715284, at *4 (D.N.J. March 5, 2012).

The Amended Complaint seeks to restrain and enjoin the New York State Department of Education and its employees from interfering in any way with Mudge's prospects for employment so long as plaintiff discloses to his prospective employers that he was once suspended from teaching. See Amended Complaint, at ¶ 57. Plaintiff contends that SED is utilizing self imposed policies, including describing any request for information as an investigation, that have a highly stigmatizing impact on teachers who have been subject to some past sanction against their license.

A fair reading of the Amended Complaint alleges that defendant Harder and other employees of SED, fueled by animus towards Mudge, continuously sought to interfere with plaintiff's employment following his suspension. However, plaintiff's claims concerning his dismissal from all but the Middleburgh District have been dismissed. What remains is a potential discrete event and not an ongoing violation of plaintiff's constitutional rights. Even assuming that defendants' actions did violate plaintiff's constitutional rights, plaintiff has not credibly alleged that the violation was ongoing after his termination from the Middleburgh District. See Singleton v. Doe, 210 F. Supp. 3d 359, 375-76 (E.D.N.Y. 2016) (finding that a parolee's claim seeking injunctive relief from a cellular telephone restriction was ongoing and therefore permissible under

Ex Parte Young). Therefore, plaintiff may not maintain a cause of action for injunctive relief and the third cause of action will be dismissed.

Further, as Mudge has failed to establish an exception to sovereign immunity under the Ex Parte Young doctrine, the Eleventh Amendment bars suit against the Commissioner of the New York State Department of Education in her official capacity. See Doe v. Annucci, 2015 WL 4393012, at *15 (S.D.N.Y. July 15, 2015). Therefore, the Commissioner will be dismissed as a defendant in this action.

## IV.   CONCLUSION

Defendants have not demonstrated adequate grounds to reconsider the denial of their motion for summary judgment with regards to Mudge's first and second causes of action. However, defendants have met their burden to entitlement to reconsideration concerning plaintiff's third cause of action for injunctive relief. Therefore, their motion to reconsider will be granted with respect to plaintiff's request for injunctive relief and the Commissioner of the New York State Department of Education will be dismissed from this case.

Therefore, it is ORDERED that:

(1) Defendants' motion for reconsideration is **GRANTED in part** and **DENIED in part**;

(2) Defendants' motion for reconsideration is **DENIED** with respects to plaintiff's first and second causes of action;

(3) Defendants' request for a finding that they are entitled to qualified immunity with respect to plaintiff's first and second causes of action is **DENIED**;

(4) Defendants' motion for reconsideration is **GRANTED** with respects to plaintiff's third cause of action;

(5) Plaintiff's third cause of action seeking injunctive relief is **DISMISSED**;

(6) the Commissioner of the New York State Department of Education is **DISMISSED** from this case;

(7) Plaintiff's first and second causes of action alleging procedural due process and a stigma plus claim concerning his dismissal from the Middleburgh School District **REMAIN** for trial; and

(8) Trial is this matter is scheduled for **May 21, 2018** in Utica, New York.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 31, 2018
       Utica, NY 13501